GREGORY R. DE LA PEÑA, California State Bar No. 126626
Email: gdelapena@dlphlaw.com
KEITH L. COOPER, California State Bar No. 175741
Email: kcooper@dlphlaw.com
DE LA PEÑA & HOLIDAY, LLP
One Embarcadero Center, Suite 2860
San Francisco, CA 94111
Telephone: (415) 268-8000
Facsimile: (415) 268-8180

Attorneys for Plaintiff
ALLEN REEVES, III

THE UNITED STATES DISTRICT COURT FOR

THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLEN REEVES, III<br><br>Plaintiff,<br><br>v.<br><br>INVERTED AXIS, INC.,<br>PATRICK DRIGGETT, an individual;<br>and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO.: _____<br><br>**PLAINTIFF'S COMPLAINT FOR:**<br><br>1. **INVOLUNTARY DISSOLUTION**<br>2. **ACCOUNTING**<br>3. **BREACH OF CONTRACT**<br>4. **BREACH OF FIDUCIARY DUTY**<br>5. **UNFAIR BUSINESS PRACTICES**<br>6. **CONVERSION**<br>7. **FRAUD**<br>8. **NEGLIGENT MISREPRESENTATION**<br>9. **PERMANENT INJUNCTIVE RELIEF**<br><br>*DEMAND FOR JURY TRIAL* |

COMES NOW Plaintiff, ALLEN REEVES (hereinafter "Plaintiff").

## JURISDICTION AND VENUE

1. The Court has diversity jurisdiction over this action insofar as the Plaintiff resides in the State of Florida; Defendant Patrick Driggett, an individual, (hereinafter "DRIGGETT") resides in the State of Washington; and Defendant INVERTED AXIS, INC. is a corporation that qualified to do business, and did business, within the state of California but now purports to maintain its principal executive office in the state of Washington (hereinafter "INVERTED"); (INVERTED and DRIGGETT are collectively referred to herein as "Defendant(s)").

2. Venue in this Court is proper under 28 U.S.C. 1391(b)(2) because the district of this Court is where a substantial part of the events or omissions giving rise to the claim occurred and, in particular, it is where Defendants performed the services and developed the product that is the subject of this complaint. Venue is also appropriate in this district insofar as this district is one in which INVERTED is subject to the court's personal jurisdiction as it continues use an agent for service of process in Chino Hills, CA.

3. INVERTED is not subject to the Banking Law, Public Utilities Law, Savings and Loan Association Act, or Sections 1010–1062 of the Insurance Code.

4. Plaintiff does not know the true names or capacities, whether individual, corporate, associate, or otherwise of Defendants sued herein as Does 1 through 100, inclusive. Plaintiff sues said Defendants by such fictitious names and prays leave to amend this Complaint when the true names and capacities of said Defendants have been ascertained.

5. The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332 and, in particular, exceeds $75,000 in monetary damages.

6. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, each Defendant, including Does 1 through 100, was the agent, servant, joint venturer, partner, and/or employee of each and every one of the other Defendants, including Does 1 through 100, and as acting within the course, scope, and in furtherance of his/her employment, his/her partnership, his/her joint venture, and/or within his/her authority. Further, each Defendant, including Does 1 through 100, ratified, authorized, and approved of the acts of each other Defendant. Any acts or omissions attributed herein to a corporation or other business entity were authorized acts, performed by an authorized representative of said entity, acting within the course and scope of his agency or authority, and/or were ratified by reasonable representative of the entity and/or within the course of scope of employment with the corporation.

7. Plaintiff is informed and believes, and thereupon alleges that, at all times herein mentioned, a unity of interests exists amongst and between each and every Defendant, including Does 1-100 such that any individuality and separateness between these Defendants has ceased, and they are the alter ego of each other and exerted control over each other.

46715 | 2 | Case No.:
PLAINTIFF'S COMPLAINT

8. Plaintiff is, and at all times mentioned herein was, an individual, and a shareholder of Defendant corporation.

## GENERAL ALLEGATIONS

9. Plaintiff realleges and incorporates herein by this reference each and every preceding and subsequent paragraph of this Complaint as though fully set forth herein.

10. Defendants were in the business of consulting, designing, creating, and developing virtual software and applications, including video games.

11. On or about August 13, 2013, Plaintiff entered into a Stock Purchase Agreement with INVERTED whereby Plaintiff purchased 300 shares of INVERTED'S common stock. A true and correct copy of the Agreement is attached hereto as Exhibit A.

12. On information and belief, at the time of the Stock Purchase Agreement, DRIGGETT was INVERTED'S sole director and officer.

13. Thereafter, on information and belief, on or about October 8, 2013, INVERTED contracted with Professional Virtual Sports, LLC to create and develop a video game according to a software development agreement.

14. On information and belief, Professional Virtual Sports, LLC was INVERTED'S only client or primary client and, in any case, money it received from Professional Virtual Sports, LLC to develop the game was its primary, if not exclusive, source of revenue.

15. On information and belief, Defendants shortly thereafter stopped providing services to Professional Virtual Sports, LLC and, consequently, Professional Virtual Sports, LLC withheld further payments to INVERTED.

16. Following the above-referenced series of events, Defendants stopped communicating with Plaintiff (and Professional Virtual Sports, LLC), failed to complete the software that was to be developed, and, on information and belief, relocated to Seattle, Washington.

//
//
//
//

## FIRST CLAIM FOR RELIEF

### (Involuntary Dissolution of INVERTED)

17. Plaintiff realleges and incorporates herein by this reference each and every preceding and subsequent paragraph of this Complaint as though fully set forth herein.

18. Plaintiff is the holder of record of an aggregate of 300 common shares of stock of defendant corporation. The number of common shares of defendant corporation that are issued and outstanding is 1,000 shares; however, the shares held by Plaintiff constitutes at least 33⅓ percent of the number of outstanding common shares of defendant corporation *exclusive of the shares owned by DRIGGETT* who, as alleged herein, personally participated in the transactions complained of.

19. In part, there appears to be internal dissension and two or more factions of shareholders in defendant corporation are so deadlocked that its business can no longer be conducted with advantage to its shareholders.

20. In other part, the officer and director and, in particular, DRIGGETT, who is in control of the corporation as the majority shareholder, has been guilty of or knowingly countenanced persistent mismanagement or abuse of authority or unfairness toward Plaintiff in that INVERTED and/or DRIGGETT have failed to account for company funds, failed to account for how Plaintiff's investment has been utilized, and failed to timely deliver the product that was the subject of a separate development agreement with the defendant corporation's primary (and possibly only client), which in turn has caused it to lose funding and impair Plaintiff's investment.

21. Further, INVERTED'S property is being misapplied and/or wasted by its directors, officers and, in particular, DRIGGETT in that INVERTED received a substantial investment of at least $60,000 from Plaintiff, plus the proceeds of the aforementioned contract totaling hundreds of thousands of dollars, yet neither DEFENDANT has accounted for same or delivered the product contemplated by the aforementioned agreement.

22. For the foregoing reasons, liquidation of INVERTED, which has fewer than 5 shareholders, is reasonably necessary for the protection of the rights and interests of Plaintiff shareholder who has apparently lost his investment that was not properly managed or accounted for;

and liquidation is required for Plaintiff to at least obtain corporate assets that Plaintiff helped pay for through his investment.

WHEREFORE, Plaintiff prays for Judgment as set forth below.

## SECOND CLAIM FOR RELIEF

**(Accounting as against all Defendants)**

23. Plaintiff realleges and incorporates herein by this reference each and every preceding and subsequent paragraph of this Complaint as though fully set forth herein.

24. As set forth herein, Plaintiff is a substantial shareholder in INVERTED. Defendants, however, were in charge and control of INVERTED'S management, accounts and affairs. This included a duty to care for and protect Plaintiff's financial interest in both the COMPANY and the products and/or services that it offered.

25. Despite Plaintiff's repeated requests for information from Defendants, Defendants have refused to provide the company's books and records, and it has not provided periodic financial statements accounting for money, property and operations.

26. Whether INVERTED has any remaining money or assets is unknown to Plaintiff, which cannot be ascertained without an accounting of expenses, income, disbursements and other financial information, including any intellectual property and the value thereof.

27. Plaintiff (and Pro V) have made at least two demands on Defendants to account for the aforementioned operations, but Defendants have failed and refused, and continue to fail and refuse, to render an accounting.

WHEREFORE, Plaintiff prays for Judgment as set forth below.

## THIRD CLAIM FOR RELIEF

**(Breach of Contract against INVERTED)**

28. Plaintiff realleges and incorporates herein by this reference each and every preceding and subsequent paragraph of this Complaint as though fully set forth herein.

29. As set forth in Exhibit A hereto, Plaintiff and Inverted entered into a written contract for the sale of shares.

DE LA PEÑA & HOLIDAY LLP
One Embarcadero Center, Suite 2860
San Francisco, CA 94111
Tel. (415) 268-8000 Fax. (415) 268-8180

30. Plaintiff has performed all the conditions covenants and promises required on his part to be performed in accordance with the terms and conditions of the contact.

31. Defendants have breached the contract by, among other things, failing to meet, apply and account for the investment breakdown set forth in the agreement; by apparently picking up and moving the offices of the company out of the state of California; and by not otherwise performing their obligations under the contract, including the warranties and representations contained therein.

32. As a result of Defendants' breach, Plaintiff has expended considerable time and money disputing and endeavoring to prevent Defendants' conduct.

WHEREFORE, Plaintiff prays for Judgment as set forth below.

### FOURTH CLAIM FOR RELIEF

**(Breach of Fiduciary Duty against DRIGGETT)**

33. Plaintiff realleges and incorporates herein by this reference each and every preceding and subsequent paragraph of this Complaint as though fully set forth herein.

34. DRIGGET was the shareholder in INVERTED who had an overwhelming majority interest in, and enough stock to control, INVERTED and, as such, had a fiduciary duty to the Plaintiff minority shareholder (and to the corporation) to use his power to control the corporation in a fair, just and equitable manner.

35. DRIGGETT has violated the fiduciary duty that he owes Plaintiff by engaging in the conduct set forth herein, including but not limited to, concealing his actions, concealing his use of funds, concealing the corporate books and records, moving the company without notice to Plaintiff, by failing to deliver a product and protect Plaintiff's investment, and also by failing to account generally for his use of funds, which also may have undermined the investment.

WHEREFORE, Plaintiff prays for Judgment as set forth below.

### FIFTH CLAIM FOR RELIEF

**(Violation of California's Unfair Competition Law Corporation Code Sections 17200 et seq against all Defendants)**

36. Plaintiff realleges and incorporates herein by this reference each and every preceding and subsequent paragraph of this Complaint as though fully set forth herein.

37. As set forth in Exhibit A, the relationship between the parties shall be governed by California law.

38. California B&P Code Section 17200 et seq prohibits any "unlawful [and] unfair...business acts or practices."

39. As more fully set forth herein, Defendants' acts and practices were unlawful and a breach of their obligations under the Business and Professions Code.

40. As a result, Defendants have been unjustly enriched and Plaintiff is entitled to disgorgement and/or restitution pursuant to California Business and Professions Code sections 17203 and 17535.

WHEREFORE, Plaintiff prays for Judgment as set forth below.

## SIXTH CLAIM FOR RELIEF

### (Conversion against all Defendants)

41. Plaintiff realleges and incorporates herein by this reference each and every preceding and subsequent paragraph of this Complaint as though fully set forth herein.

42. Defendants wrongfully exerted dominion over Plaintiff's property by actually interfering with Plaintiff's ownership and right of possession; namely, Defendants accepted money from Plaintiff but, without accounting for it or returning it, Defendants have failed to deliver it back or otherwise make it available to Plaintiff.

43. Plaintiff has a right to possession of the money in question to the extent Defendants have not used it or accounted for it and Defendants has refused to make it available to Plaintiff.

44. As a result of Defendants wrongfully exerting dominion over Plaintiff's property, Plaintiff has been damaged by losing use of his property, incurring costs and expenses to request his property, resulting in loss of use of money, costs of lawsuit, attorneys' fees, and other incidental and consequential damages.

WHEREFORE, Plaintiff prays for judgment as set forth in the Prayer for Relief below.

//

//

//

## SEVENTH CLAIM FOR RELIEF

### (Fraud and Intentional Deceit against all Defendants)

45. Plaintiff realleges and incorporates herein by this reference each and every preceding and subsequent paragraph of this Complaint as though fully set forth herein.

46. Defendants made a variety of representations, including that it would use Plaintiff's investment to develop a video game and associated intellectual property, which it represented would be developed in a commercially satisfactory manner.

47. These representations were false and/or the true facts were deliberately concealed in that Defendants have not developed the property, have converted, mismanaged or wasted Plaintiff's investment without any intent of completing the development of the game.

48. Defendants knew these representations were false at the time they were made and/or deliberately concealed the true facts.

49. Plaintiff reasonably relied on these representations and the non disclosure, omission/concealment of the true facts.

50. Plaintiff's reliance was to their detriment as a result of Defendants' breach of the agreement, Plaintiff has been damaged by losing his investment, incurring costs and expenses, resulting in loss of use of money, costs of lawsuit, attorneys' fees, and other incidental and consequential damages. Plaintiff alleges that the damages are in at least $75,000 and are continuing and progressive.

51. Defendants knew that they did not intend to complete the development of the game.

52. As a direct and proximate result of each breach of the aforesaid duties, Plaintiff has suffered damages in excess of the minimum jurisdictional amount of the Court, in an amount to be shown according to proof at trial, and including, but not limited to incurred costs and expenses, loss of use of money, costs of suit, attorneys' fees, and other incidental and consequential damages

WHEREFORE, Plaintiff prays for judgment as set forth in the Prayer for Relief below.

//

//

//

## EIGHTH CLAIM FOR RELIEF

### (Negligent Misrepresentation against all Defendants)

53. Plaintiff realleges and incorporates herein by this reference each and every preceding and subsequent paragraph of this Complaint as though fully set forth herein.

54. Defendants made a variety of representations, including that the video game and intellectual property produced by Defendants would be commercially satisfactory and delivered to Pro V Sports for release.

55. Defendants had a duty to Plaintiff to take reasonable precautions and to otherwise act reasonably to ensure the representations were true.

56. Defendants had a duty to Plaintiff to disclose all material facts, not to omit material facts, and not to conceal material facts, including but not limited to the fact it wasted or mismanaged Plaintiff's investment and could not or would not be able to complete the development of the game.

57. These representations were false and/or the true facts were concealed in that the Defendants have not made the property available to Plaintiff and/or delivered or provided the intellectual property to Plaintiff.

58. Plaintiff reasonably relied on these representations and the non-disclosure, omission/concealment of the true facts.

59. Plaintiff's reliance was to their detriment. They have been damaged by incurring costs and expenses, loss of use of money, costs of lawsuit, and other incidental and consequential damages. Plaintiff alleges that the damages are in at least $75,000 and are continuing and progressive.

60. Defendants did not act reasonably in that they should have know these representations were false at the time they were made and/or they should have disclosed that they did not intend to make available Plaintiff's intellectual property.

61. As a direct and proximate result of each breach of the aforesaid duties, Plaintiff has been damaged by losing use of their properties, incurring costs and expenses to request their

properties, delays in developing their intellectual property, resulting in loss of use of money, costs of lawsuit, attorneys' fees, and other incidental and consequential damages.

WHEREFORE, Plaintiff prays for judgment as set forth in the Prayer for Relief below.

## NINTH CLAIM FOR RELIEF

### (Preliminary And Permanent Injunction

### Against DRIGGETT and INVERTED)

62.   Plaintiff realleges and incorporates herein by this reference each and every preceding and subsequent paragraph of this Complaint as though fully set forth herein.

63.   From August 2014, and continuing to the present time, DRIGGETT, on his own behalf and on behalf of INVERTED, has wrongfully and unlawfully withheld from Plaintiff information relating to INVERTED and has threatened to conceal, damage, and/or destroy a videogame in production by INVERTED, and specifically the underlying code, which is the principal asset of INVERTED and in which Plaintiff, as a thirty percent (30%) owner of INVERTED, has a major pecuniary interest.

64.   Plaintiff has demanded that DRIGGETT and INVERTED stop its threatened actions and DRIGGETT has failed and refused to commit not to damage and/or destroy the videogame, and has now refused to communicate with Plaintiff resulting in the necessity for prompt judicial action to protect Plaintiff. Plaintiff, therefore, seeks assurances that the game will not be destroyed, which would completely undermine his investment in the company.

65.   Additionally, DRIGGETT and INVERTED have admitted in writing that the portions of the code already paid for by Professional Virtual Sports, LLC, belong to Professional Virtual Sports, LLC, who demanded that DRIGGETT and INVERTED release the code to Professional Virtual Sports, LLC so that development of the game be completed, which DRIGGETT and INVERTED have refused to do. Allowing the code to be release to Professional Virtual Sports, LLC could ensure that Plaintiff's investment is not lost.

66.   DRIGGETT's and INVERTED's threatened and wrongful conduct, unless and until enjoined and restrained by order of this court, will cause great and irreparable injury to Plaintiff as the destruction of the videogame, as well as the failure to release completed portions of the game,

will result in the loss of the major asset of INVERTED, and subject Plaintiff to litigation from Pro-V, the entity that commissioned the creation of the video game and who has paid INVERTED eight hundred thousand dollars ($800,000) to create the game and, by contract, is the rightful owner of the video game; which has been admitted to in writing by DRIGGETT on behalf of INVERTED.

67. Plaintiffs have no adequate remedy at law for the injuries threatened as the video game is unique in all the world and monetary damages are inadequate to compensate for its loss.

68. By reason of DRIGGETT's and INVERTED's wrongful conduct and threats to destroy or otherwise damage the video game, Plaintiffs have sustained damages in excess of seventy-five thousand dollars ($75,000); Plaintiff prays leave of the Court to amend this complaint and add the exact amount of their damages as soon as they are ascertained.

## DEMAND FOR JURY TRIAL

Plaintiff herein demands a trial by jury on any issue triable of right by a jury, on all claims for relief and triable issues that may be properly tried by a jury, including claims for relief two through 8 above.

## PRAYER

### ON THE FIRST CLAIM FOR RELIEF

1. That the court decree a winding up and dissolution of defendant corporation;

2. That the court entertain such proceedings as may be necessary or proper for the involuntary winding up or dissolution of defendant corporation and, in that regard, make such orders for winding up and dissolution of defendant corporation as justice and equity require;

3. For costs of suit herein incurred; and

4. For such other and further relief as the court may deem proper.

### ON THE SECOND CLAIM FOR RELIEF

1. For an Accounting

2. For reasonable attorney fees according to proof

### ON THE THIRD CLAIM FOR RELIEF

1. For compensatory damages according to proof

ON THE FOURTH CLAIM FOR RELIEF

1. For disgorgement

2. For restitution

ON THE FIFTH CLAIM FOR RELIEF

1. For interest pursuant to law

2. For costs of suit

3. For other such and further relief as this Court deems just and proper.

ON THE SIXTH CLAIM FOR RELIEF

1. For the value of the property converted in the sum of $60,000

2. For interest at the legal rate on the foregoing sum pursuant to Section 3336 of the Civil Code, from and after August 13, 2013

3. For damages for the proximate and forseeable loss resulting from defendant's conversion in the sum of $60,000

4. For damages for time and money properly expended in pursuit of the converted property in an amount to be determined at the time of trial

5. For punitive and exemplary damages in an amount to be determined at trial

6. For costs of suit herein incurred, and

7. For such other and further relief as the court may deem proper.

ON THE SEVENTH CLAIM FOR RELIEF

1. For general damages in an amount to be proven at trial

2. For punitive damages in an amount to be determined at trial

3. For costs of suit incurred herein, and

4. For such other and further relief as the court may deem proper.

ON THE EIGHTH CLAIM FOR RELIEF

1. For general damages in an amount to be proven at trial

2. For costs of suit incurred herein, and

3. For such other and further relief as the court may deem proper.

//

//

ON THE NINTH CLAIM FOR RELIEF

1. For a permanent injunction against DRIGGETT and INVERTED

Dated: February 25, 2015

DE LA PEÑA & HOLIDAY LLP

By_____
Gregory R. de la Peña
Keith L. Cooper
Attorneys for Plaintiff
ALLEN REEVES

EXHIBIT A

## Stock Purchase Agreement

THIS AGREEMENT is made and entered on August 22, 2013 by and between, Inverted Axis, Inc. ("Seller") of 4394 Ironwood Dr., Chino Hills, California 91709 and Allen N. Reeves, III ("Purchaser") of 114 Locust Dr., _Bradenton_, Florida, _33511_.

WITNESSETH:

Whereas, the Seller is a duly organized Corporation, who is the record owner of outstanding shares of the capital stock of Inverted Axis, Inc. (hereinafter referred to as the "Corporation"), a California corporation, which has authority to sell 300 shares of capital stock at $200.00 par value common stock, out of a total of 1000 shares outstanding at the time of this agreement, and

WHEREAS, the Purchaser desires to purchase said stock and the Seller desires to sell said stock, upon the terms and subject to the conditions hereinafter set forth;

NOW, THEREFORE, in consideration of the mutual covenants and Agreements contained in this Agreement, and in order to consummate the purchase and the sale of the Corporation's Stock aforementioned, it is hereby agreed as follows:

**Purchase and Sale**
Subject to the terms and conditions hereinafter set forth, at the closing of the transaction contemplated hereby, the Seller shall sell, convey, transfer, and deliver to the Purchaser certificates representing such stock, and the Purchaser shall purchase from the Seller the Corporation's Stock in consideration of the purchase price set forth in this Agreement. The certificates representing the Corporation's Stock shall be duly endorsed for transfer or accompanied by appropriate stock transfer powers duly executed in blank, in either case with signatures guaranteed in the customary fashion, and shall have all the necessary documentary transfer tax stamps affixed thereto at the expense of the Seller.

The closing of the transactions contemplated by this Agreement (the "Closing"), shall be held at Inverted Axis, Inc. located at 4394 Ironwood Dr., Chino Hills, California 91709 on January 01, 2014, at 09:00am Pacific Standard Time, or such other place, date and time as the parties hereto may otherwise agree.

**Amount and Payment of Purchase Price**
**(a) Consideration**
As total consideration for the purchase and sale of the Corporation's Stock, pursuant to this Agreement, the Purchaser shall pay to the Seller the sum of $60,000.00, such total consideration to be referred to in this Agreement as the "Purchase Price".

**(b) Payment**
The Purchase Price shall be paid as follows:

    i. The sum of $15,000.00 to be delivered to Seller upon the execution of this Agreement.

    ii. Eight computers with a value of $15,000.00 will be ordered by the Purchaser upon the execution of this Agreement

    iii. The sum of $10,000.00 to be delivered to Seller on November 1, 2013

    iv. The sum of $10,000.00 to be delivered to Seller on December 1, 2013

    v. The sum of $10,000.00 to be delivered to Seller at Closing.

**Representations and Warranties of Seller**
Seller hereby warrants and represents:

**(a) Organization and Standing**
The Seller is a corporation duly organized, validly existing and in good standing under the laws of the State of California and has the corporate power and authority to carry on its business as it is now being conducted.

**(b) Restrictions on Stock**
i. The Seller is not a party to any Agreement, written or oral, creating rights in respect to the Corporation's Stock in any third person or relating to the voting of the Corporation's Stock.

ii. Seller is the lawful owner of the Stock, free and clear of all security interests, liens, encumbrances, equities and other charges.

iii. There are no existing warrants, options, stock purchase agreements, redemption agreements, restrictions of any nature, calls or rights to subscribe of any character relating to the stock, nor are there any securities convertible into such stock.

Representations and Warranties of Seller and Purchaser
Seller and Purchaser hereby represent and warrant that there has been no act or omission by Seller and Purchaser which would give rise to any valid claim against any of the parties hereto for a brokerage commission, finder's fee, or other like payment in connection with the transactions contemplated hereby.

**General Provisions**
**(a) Entire Agreement**
This Agreement (including any written amendments hereof executed by the parties) constitutes the entire Agreement and supersedes all prior agreements and understandings, oral and written, between the parties hereto with respect to the subject matter hereof.

**(b) Sections and Other Headings**
The section and other headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

**(c) Governing Law**

This Agreement, and all transactions contemplated hereby, shall be governed by, construed and enforced in accordance with the laws of the State of California. In the event that litigation results from or arises out of this Agreement or the performance thereof, the parties agree to reimburse the prevailing party's reasonable attorney's fees, court costs, and all other expenses, whether or not taxable by the court as costs, in addition to any other relief to which the prevailing party may be entitled.

IN WITNESS WHEREOF, this Agreement has been executed by each of the individual parties hereto on the date first above written.

SELLER:

_____  10/9/2013
Patrick Driggett   Date
Director and Owner for Inverted Axis, Inc.

PURCHASER:

_____  10/8/2013
Allen N. Reeves, III   Date

| Investment Breakdown | |
|---|---|
| $16,038.66 | 8x Developer Machines |
| $5,799.60 | Render/Lightbaking Servers |
| $1,769.70 | Configuration Management Server |
| $269.98 | Managed Network Switch |
| $14,000.00 | Hired Developer Moving Expenses |
| $8,076.92 | Early Hire in January |
| $2,385.00 | zBrush Software |
| $1,320.17 | Interview Travel |
| $629.88 | Interview Hotel |
| $1,348.20 | After Effects UI Dev Software |
| $1,468.98 | Artist WACOM hardware |
| $2,800.00 | Job Advertising |
| $3,000.00 | Developer Signing Bonus |
| $1,259.81 | Adobe Software |
| $60,166.90 | Total |